UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RICHARD AUSTIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket No. 2:20-cv-00182-NT |
| | ) |
| MAINELY CONSTRUCTION RENTALS, LLC, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

The Plaintiff, Richard Austin, claims that his former employer unlawfully discriminated against him because of his disability. Because there are genuine factual disputes about (1) the essential functions of Austin's job, and (2) whether he can perform those essential functions with or without an accommodation, the Defendants' motion for summary judgment is **denied**.

**FACTUAL BACKGROUND**[1]

**I.    The Parties**

Defendant Coastal Masonry & Contracting, Inc., ("**CMC**") is a masonry company that works on commercial construction projects in and around Portland,

---

[1] The following background is drawn from the parties' Joint Statement of Material Facts ("**JSMF**") (ECF No. 49) and the Plaintiff's Response to Defendants' Objections and Requests to Strike Reply Statement of Material Facts ("**SOF**") (ECF No. 64). The Defendants request to strike some of the Plaintiff's responses to the Defendants' statements of fact, *see* SOF ¶¶ 30–31, 35–37, 39–40, 43–45, 47, and some of the Plaintiff's additional statements of fact, *see* SOF ¶¶ 94, 103, 105, 152–53, 163, 170–71, 193, 196. I need not address most of these requests to strike, because, for the most part, I do not rely on the responses or statements of fact that the Defendants request to strike. Even if I were to grant all of these requests to strike, there would remain genuine issues of material fact in the Record

Maine. Joint Statement of Material Facts ("**JSMF**") ¶¶ 1–2 (ECF No. 49). Defendant Mainely Construction Rentals, LLC, ("**MCR**") is a company that owns and rents out various types of scaffolding to other construction companies. JSMF ¶¶ 5–6. CMC and MCR (the "**Defendants**") are both co-owned by Jan and Michael Martin and Rebecca Lizotte, and it seems that the two companies sometimes share workers with, or lend out workers to, each other. Pl.'s Resp. to Defs.' Objs. & Reqs. to Strike Reply Statement of Material Facts ("**SOF**") ¶¶ 9–10, 19, 60–61 (ECF No. 64). Austin was hired by CMC as a Laborer in December of 2018, though he worked on an MCR construction project for the entirety of his employment. SOF ¶¶ 59, 61. Austin worked for the Defendants for about six weeks before his employment ended on February 5, 2019. JSMF ¶ 32.

## II. The Laborer Position

Both CMC and MCR rely on Laborers like Austin to erect and dismantle scaffolding. SOF ¶¶ 3, 16. In 2013, Lizotte drafted job descriptions for the CMC and MCR Laborer positions, which were incorporated into both companies' employee handbooks. SOF ¶¶ 20, 22. The job descriptions include the "[a]bility to work from heights" and the "[a]bility of working on scaffolding and/or in high exposed places" as "important functions" of the Laborer position. SOF ¶¶ 23–25.

At the time Austin was hired, CMC was providing Laborers to MCR to help install scaffolding for a construction project adding additional floors to the East Tower

---

with regard to each of the claims and issues on which the Defendants seek summary judgment. To the extent the Defendants' requests to strike require resolution, I address them below.

at Maine Medical Center ("**East Tower Overbuild Project**," or the "**Project**"). SOF ¶¶ 60–61. As part of the Project, CMC and MCR employees, including Austin, worked on erecting and dismantling scaffolding and putting a winter cover on the Medical Center's helipad. SOF ¶¶ 66–67, 80. This work required Laborers to work at heights of more than 140 feet. SOF ¶ 65. Austin was also trained to operate a Hydro Mobile platform elevator, which shuttles material and workers up and down scaffolding. SOF ¶¶ 6, 83.[2]

Austin and the Defendants dispute whether fall protection, such as the use of a safety harness, is always available when Laborers are working at heights. *See* SOF ¶¶ 30–31, 35–37, 39–40,[3] 141, 143–45, 147–49, 151. The parties agree, however, that the Defendants do not have any work for Laborers or other unskilled employees who are unable to work at heights at all. SOF ¶ 41.

### III.  Austin's Medical Condition

On the morning of January 31, 2019, a few weeks into his job as a Laborer for the Defendants, Austin suddenly lost consciousness and fell to the floor at the East

---

[2]   The parties disagree whether this was Austin's primary role while he was employed with the Defendants, but there is no dispute that Austin spent at least some of his time operating the Hydro Mobile elevator. *See* SOF ¶ 83.

[3]   The Defendants request to strike Austin's denial of paragraphs 30, 31, 35, 36, 37, 39, and 40, asserting that Austin's "citations to the record do not support a denial" of these paragraphs. SOF ¶¶ 30, 31, 35, 36, 37, 39, 40. These requests to strike are denied because the Plaintiff's responses cite to documents in the Record, namely the depositions of Jan Martin and Martha Catevenis. Moreover, to the extent that the Martin and Catevenis depositions contain inconsistencies or are subject to different interpretations, such questions of fact are not resolvable on a motion for summary judgment. *See Morrissey v. Procter & Gamble Co.*, 379 F.2d 675, 677 (1st Cir. 1967) ("Nothing is clearer than this on a motion for summary judgment; if a party has made an evidentiary showing warranting a favorable inference, contradiction cannot eliminate it. Summary judgment may not be granted where there is the slightest doubt as to the facts." (internal quotation marks omitted)).

3

Tower Overbuild Project while riding an elevator to a morning meeting. JSMF ¶¶ 19–22. He was immediately transported to the Maine Medical Center Emergency Department for treatment. JSMF ¶ 24. Austin had previously been diagnosed with ventricular tachycardia, a heart condition that causes him to feel lightheaded or dizzy, flushed, short of breath, and, on occasion, to experience syncope (the temporary loss of consciousness). JSMF ¶ 14. Austin takes a prescribed medication for this condition. JSMF ¶ 15. Austin's cardiologist and the medical experts designated by both parties agree that Austin's syncopal episode on January 31, 2019, could have been caused by an onset of tachycardia or a sudden drop in blood pressure. JSMF ¶ 25.

Austin had his first episode of syncope in 2017 and did not have another episode until 2019, when he experienced syncope on three occasions: the episode at the East Tower Overbuild Project construction site on January 31, and then again in September and December of 2019. JSMF ¶¶ 16–17, 26–27. Austin does not always feel warning symptoms before losing consciousness and sometimes experiences pre-syncope symptoms without losing consciousness at all. JSMF ¶¶ 28–29.

Following a brief stay at the hospital, Austin saw his primary care provider, who was aware that Austin had a job that involved working from heights and who provided Austin with a note clearing him to return to work. SOF ¶¶ 95, 97, 106.[4]

---

[4] Whether the doctor was aware of Austin's need to work from heights is disputed, but the Plaintiff points to evidence that he and his wife did explain his job requirements to his doctor. The Defendants request to strike several assertions made by Austin as to the extent to which his physician understood the nature of Austin's job and whether his physician spoke to one of Austin's cardiac care providers before agreeing to write him a note clearing him to return to work. *See* SOF ¶¶ 103, 105. The Defendants argue that, to the extent Austin relies on his and his wife's (who accompanied him to the doctor's appointment) depositions to support what Austin told his physician and what his physician

Austin asserts that the Defendants refused to let him return to work despite the note from his physician and that the Defendants terminated his employment.[5] Compl. ¶¶ 64, 101 (ECF No. 1-2). Following his termination, Austin continued working in construction, including as a roofer. SOF ¶¶ 199–200

## IV. Austin's Claims and the Defendants' Motion for Summary Judgment

In April of 2020, Austin filed a Complaint alleging that the Defendants violated his rights under the Maine Human Rights Act ("**MHRA**") (Count I), 5 M.R.S. §§ 4551, *et. seq.*, and the Americans with Disabilities Act ("**ADA**") (Count II), 42 U.S.C. §§

---

said and did, it is inadmissible hearsay that should be stricken. The Plaintiff responds that the statements regarding what the Plaintiff told the doctor are not being offered for their truth (i.e., that he did work from heights) but rather to show the doctor's knowledge when he issued the note. Because it is possible that the statements are either not hearsay or that they fall within an exception to the hearsay rule, *see, e.g.*, Fed. R. Evid. 803(4), the Defendants' objections on hearsay grounds are overruled for purposes of this motion for summary judgment. The Defendants also cite *Garside v. Osco Drug, Inc.*, a First Circuit case in which the sole evidence presented by the plaintiffs to support their claim was their own statement, contained in an interrogatory answer, that an expert witness would testify in support of that claim at trial. *See* 895 F.2d 46, 49 (1st Cir. 1990). The court determined that the plaintiffs' interrogatory answer was inadmissible hearsay and that "[a] third party's description of an expert's supposed testimony is not suitable grist for the summary judgment mill." *Id.* at 50. Here, by contrast, Austin's and his wife's recollections of the conversation with Austin's physician are not being introduced to prove a matter that only a medical expert would be competent to testify to; rather, their recollections are introduced to demonstrate that Austin's physician cleared him to return to work with the knowledge that Austin worked at heights and after consulting with one of Austin's cardiac care providers. *Garside* is thus distinguishable. Finally, the Defendants deny the Plaintiff's assertion that Austin and his wife told the doctor that he worked from heights, pointing to the physician's testimony that he could not recall whether he and Austin discussed the specifics of Austin's job or whether he had spoken to anyone else about Austin's condition but that it would be his practice to have a cardiologist approve the return to work if heights were involved. The physician's testimony, while not verifying Austin's and his wife's recollections, also does not directly contradict them. *See* Kevin Shanaghan Dep. 17:1–19:4 (ECF No. 60-2). But even if it did, the Defendants would have only succeeded in creating a material dispute involving a credibility determination that is best resolved by a jury.

[5]    Here again, the parties dispute the factual circumstances surrounding the end of Austin's employment. The Defendants claim that Austin resigned from his position, Defs.' Mot. for Summ. J. ("**MSJ**") 14 (ECF No. 48), but on a motion for summary judgment disputed facts are viewed in the light most favorable to the non-moving party, *EdgePoint Cap. Holdings, LLC v. Apothecare Pharmacy, LLC*, 6 F.4th 50, 57 (1st Cir. 2021).

5

12101, *et seq.* Compl. 11.[6] Austin alleges that he is a qualified individual with a disability as defined by the MHRA and the ADA "in that he can perform the essential functions of the job he held with Defendants, with or without reasonable accommodations," Compl. ¶ 25, and that the Defendants violated his rights under the MHRA and the ADA when they terminated his employment on the basis of his disability, Compl. ¶ 101.

The Defendants have moved for summary judgment on both counts of Austin's Complaint on the grounds that Austin cannot "show that he was a 'qualified individual with a disability' as defined by the ADA and MHRA," and thus that he cannot establish a prima facie case of discrimination. Defs.' Mot. for Summ. J. ("**MSJ**") 5 (ECF No. 48).

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A genuine dispute is 'one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.'" *Flaherty v. Entergy Nuclear Operations, Inc.*, 946 F.3d 41, 53 (1st Cir. 2019) (quoting *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)). A fact is material where it could influence the outcome of the litigation. *Tropigas de P.R., Inc. v. Certain*

---

[6] The case was first filed in state court and then removed to this Court on May 21, 2020. *See* Notice of Removal (ECF No. 1).

6

*Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011). On a motion for summary judgment, I must construe the record in the light most favorable to the non-movant and resolve all reasonable inferences in the non-movant's favor. *Burns v. Johnson*, 829 F.3d 1, 8 (1st Cir. 2016).

## DISCUSSION

### I. The Analytical Framework of the ADA & MHRA

The ADA and the MHRA (collectively, the "**Acts**") both prohibit employers from discriminating against "qualified individuals" with disabilities on the basis of their disabilities. 42 U.S.C. § 12112(a); 5 M.R.S. § 4572(2). To establish a prima facie case of discrimination under the ADA and MHRA, the Plaintiff bears the initial burden of establishing that he (1) was disabled within the meaning of the Acts, (2) was a "qualified individual," and (3) was discharged in whole or in part because of his disability. *Brown v. Hartt Transp. Sys.*, 725 F. Supp. 2d 210, 233 (D. Me. 2010). Here, the Defendants attack the Plaintiff's claims on the ground that he is not a qualified individual and thus has failed to establish a *prima facie* case of discrimination. MSJ 5–6.

The ADA and MHRA define "qualified individual" as an individual "who, with or without reasonable accommodation, can perform the essential functions of the employment position that [he] holds or desires." 42 U.S.C. § 12111(8); 5 M.R.S. § 4553(8-D). A two-step process is used to determine whether an individual is a qualified individual. *See Goodrich v. WellPoint, Inc.*, No. 2:14-cv-00037-JDL, 2015 WL 4647907, at *4 (D. Me. Aug. 5, 2015). First, the court considers whether the Plaintiff

7

"possesses the requisite skill, experience, education and other job-related requirements for the position." *García-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 646 (1st Cir. 2000) (internal quotation marks omitted). Second, the court looks to whether the Plaintiff "is able to perform the essential functions of the position with or without reasonable accommodation." *Id.* (internal quotation marks omitted). In this case, the Defendants do not dispute that Austin possessed the requisite education, skills, or other job-related experience for the Laborer position. MSJ 9. Thus, my analysis is confined to the second step of the qualified individual analysis, whether the Plaintiff is able to perform the essential functions of the job with or without a reasonable accommodation.

## II.  Analysis

### A.  Essential Functions

The Defendants and Austin agree that working at heights is an essential function of the Laborer position. SOF ¶¶ 23, 27–29, 33. What is in dispute, however, is whether working at heights *without fall protection* is an essential function. This distinction between working at heights and working at heights without fall protection is crucial in this case because Austin seems to concede that, due to his history of suddenly losing consciousness, he must use fall protection, such as a safety harness, when working at heights.

"An 'essential function' is a fundamental job duty of the position at issue." *Mulloy v. Acushnet Co.*, 460 F.3d 141, 147 (1st Cir. 2006) (quoting *Kvorjak v. Maine*, 259 F.3d 48, 55 (1st Cir. 2001)). "The term does not include 'marginal' tasks, but may encompass 'individual or idiosyncratic characteristics' of the job." *Kvorjak*, 259 F.3d

8

at 55 (quoting *Ward v. Mass. Health Rsch. Inst.*, 209 F.3d 29, 34 (1st Cir. 2000)). While courts "generally give substantial weight to the employer's view of job requirements in the absence of evidence of discriminatory animus, it is only one factor in the analysis." *Ward*, 209 F.3d at 34 (internal citations omitted). Equal Employment Opportunity Commission ("**EEOC**") interpretive regulations include the employer's view as one factor to be considered but also indicate several additional considerations, including: "[w]ritten job descriptions prepared before advertising or interviewing applicants for the job"; "[t]he amount of time spent on the job performing the function"; "[t]he consequences of not requiring the incumbent to perform the function"; "[t]he work experience of past incumbents in the job"; and "[t]he current work experience of incumbents in similar jobs." 29 C.F.R. § 1630.2(n)(3); *accord Mulloy*, 460 F.3d at 147 (quoting 29 C.F.R. § 1630.2(n)(3)); *Ward*, 209 F.3d at 34 (same). "The issue of essential functions is not commonly in dispute; but when it is, it often proves difficult to resolve at summary judgment, because the inquiry 'involves fact-sensitive considerations and must be determined on a case-by-case basis.' " *Rooney v. Sprague Energy Corp.*, 483 F. Supp. 2d 43, 53 (D. Me. 2007) (quoting *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 25 (1st Cir. 2002)). Moreover, because the employer-defendants typically have better access to the relevant evidence regarding what functions are essential, they "should bear the burden of proving that a given job function is an essential function." *Ward*, 209 F.3d at 35.

In this case, the Defendants claim that working at heights without fall protection is an essential function of the Laborer position. MSJ 5. In support of this argument, the Defendants assert the following facts:

- The Laborer job description required Laborers to be able to "work[ ] on scaffolding and/or in high exposed places." MSJ 3.

- This requirement was included in the job description because "fall protection is not possible when Laborers are erecting and dismantling scaffolding and when there is a jump or stair stringer, which occurs when the work on one of the building's levels is completed and the work platforms are moved from one floor to the next higher floor." MSJ 4.

- This type of "jump" occurred approximately thirty-two times at the East Tower Overbuild Project where the Plaintiff worked and approximately ten times at another more recent MCR construction site. MSJ 4.

- Fall protection is also not available when Laborers are erecting a pedestrian canopy. MSJ 4.

- This type of situation, where fall protection was not available while Laborers were erecting a pedestrian canopy, has occurred on approximately ten occasions on MCR worksites over the past five years. MSJ 4.

Even taking these factual assertions into account, none of the factors under the EEOC's framework clearly weighs in the Defendants' favor. As to the first factor—the employer's view of the job requirements—although the Defendants now assert that working at heights without fall protection is an essential function of the Laborer position, they also admit that Austin was never informed before or after his hire that his job would entail working without fall protection. SOF ¶¶ 155–56.

As to the second factor—the job description—although the written job description prepared before Austin was hired mentions "work[ ] on scaffolding and/or in high exposed places," it is not obvious to me that this description suggests that Laborers would be required to work on scaffolding or in high exposed places *without*

10

*some kind of fall protection*. Indeed, the Defendants' employee manuals state that fall protection is required whenever an employee is working above six feet. SOF ¶ 159.

As to the third factor—the amount of time spent performing the function—while the Defendants estimate that Laborers have been required to work without fall protection on CMC and MCR worksites on numerous occasions in the past five years, there is insufficient detail in the statement of facts to allow me to conclude what proportion of time is spent on these task. For example, the Defendants claim that fall protection cannot be used when a "jump" is performed. Even granting the Defendants' assertion that "jumps" occurred approximately thirty-two times on the East Tower Overbuild Project, *see* SOF ¶ 37, there is nothing in the record which indicates how long it takes to do a jump or whether other work can be conducted simultaneously with it. Moreover, it is undisputed that Austin worked for the Defendants for six weeks and that he always had fall protection and was never asked to work without a safety harness. SOF ¶¶ 90–91. There appears to be conflicting testimony from key witnesses about how often, if ever, fall protection is unavailable, which suggests, at the very least, that this fact remains in dispute. *See* SOF ¶¶ 30–31, 35–37, 39–40, 137–39, 141, 143–45, 148–49, 151.

As to the fourth factor, which looks to the consequences of not requiring the incumbent to perform the function, the record provides insufficient detail to allow me to make much of a conclusion. It is not clear if other Laborers might be available to take on the tasks that require working at heights without fall protection should

11

Austin be unable to do them. *See* SOF ¶ 152.[7] Nor is it clear whether other work is available during periods when things such as jumps are being performed.

Finally, the fifth and sixth considerations, which involve the past and current experiences of incumbents in this job and similar jobs, do not clearly support the Defendants' position that working at heights without fall protection is an essential function of the Laborer position because it remains in dispute how often fall protection is actually unavailable. *See* SOF ¶¶ 30–31, 35–37, 39–40, 137–39, 141, 143–45, 148–49, 151.

Based on this record, a reasonable factfinder could conclude that working at heights without fall protection is not an essential function of the Laborer position. Thus, summary judgment is not appropriate on this issue.

### B.     Accommodations

Austin argues that reasonable accommodations would enable him to perform the essential functions of the Laborer position. First, to the extent fall protection is unavailable for certain tasks, Austin asserts that other Laborers could perform those tasks. Pl.'s Opp'n to Defs.' MSJ 17 (ECF No. 55). Second, Austin asserts that he could wear a safety harness whenever he is required to work at heights. Pl.'s Opp'n to Defs.'

---

[7]     At paragraph 152, the Plaintiff, citing documents in the Record, asserts that the "Defendants were unable to provide any specifics" when they were asked "what other laborers were doing for work at times when one of the laborers was working at heights without fall protection." SOF ¶ 152. The Defendants deny and request to strike this paragraph, arguing that "SMF ¶ 15[2] is merely a self-serving conclusory statement" that mischaracterize Defendants' Interrogatory Response. This request to strike is denied because paragraph 152 is not conclusory, but rather relies on a reasonable characterization of documents in the Record, namely Defendants' Interrogatory Responses.

MSJ 17–20. The Defendants counter that Austin has not met his burden of demonstrating that these accommodations are reasonable.[8] MSJ 18.

"A reasonable accommodation is a change in workplace conditions that would enable an employee to perform the essential functions of her job." *Trahan v. Wayfair Me., LLC*, 957 F.3d 54, 65 (1st Cir. 2020). The Plaintiff bears the burden of proving that the accommodation would enable him to perform the essential functions of his job and that, "at least on the face of things, the accommodation is feasible for the employer under the circumstances." *Richardson v. Friendly Ice Cream Corp.*, 594 F.3d 69, 81 (1st Cir. 2010) (quoting *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 136 (1st Cir. 2009)). A reasonable accommodation may include job restructuring, but "an employer need not exempt an employee from performing essential functions, nor need it reallocate essential functions to other employees." *Mulloy*, 460 F.3d at 153 (quoting *Phelps v. Optima Health, Inc.*, 251 F.3d 21, 26 (1st Cir. 2001)). An accommodation that imposes an "undue hardship" on an employer is not reasonable. *Ward*, 209 F.3d at 36–37; *Rooney*, 483 F. Supp. 2d at 58.

Here, a factfinder could determine that Austin's proposed accommodations are reasonable. First, as explained above, the parties dispute whether working at heights without fall protection is an essential function, and so I cannot say with certainty

---

[8] The Defendants also contend that Austin has waived the issue of reasonable accommodations because he failed to include a separate cause of action for failure to accommodate in his complaint. MSJ 18. Austin, however, does not appear to be asserting a separate failure to accommodate claim. Rather, he raises the issue of accommodations in the context of establishing that he is a qualified individual under the ADA and MHRA. *See* Compl. ¶ 25 (ECF No. 1-2); Pl.'s Opp'n to Defs.' MSJ 16–17 (ECF No. 55). Therefore, the issue of whether there are reasonable accommodations that would enable Austin to perform the essential functions of the Laborer position is not waived insofar as it is part of the qualified individual analysis.

13

that reallocating tasks where fall protection is unavailable to other Laborers would be a reallocation of an essential function. Moreover, in terms of feasibility, it is not clear to what extent restructuring Austin's role to avoid tasks where fall protection is unavailable would burden the Defendants or disrupt current practices. *See* SOF ¶ 152. Second, a reasonable factfinder could find that the use of a safety harness is a reasonable accommodation. Evidence in the record indicates that safety harnesses are already available to Laborers the majority of the time they work at heights. SOF ¶¶ 73, 91, 137–39, 149, 159. And, testimony from the Defendants' expert witness suggests that Austin could perform most of his duties with the use of a safety harness. *See* SOF ¶ 43. Thus, there remains a triable issue of fact whether Austin could perform the essential functions of the job with an accommodation.

### C. Safety Risks

The Defendants assert that Austin is not a qualified individual because, even with an accommodation, Austin's continued employment as a Laborer would pose safety risks to himself and others. MSJ 16. These risks include the risk that falling while in a safety harness would exacerbate Austin's heart condition, as well as the risk that Austin could drop tools onto his coworkers or pedestrians. MSJ 20. The Plaintiff counters that the safety risk issue is part of an affirmative defense that the Defendants have waived, and for which the Defendants bear the burden of proof under the ADA and MHRA. Pl.'s Opp'n to Defs.' MSJ 8–9.[9]

---

[9] I agree with Austin that, as it pertains to the MHRA claim, the safety risk issue is not part of the qualified individual analysis. Rather, as the First Circuit has held, "the burden of proving safety risk under [the MHRA] rest[s] solely with the defendant" as part of an affirmative defense. *Warren v. United Parcel Serv., Inc.*, 518 F.3d 93, 99 (1st Cir. 2008). Here, the Defendants concede that they have

14

In *EEOC v. Amego, Inc.*, the First Circuit held that, under the ADA, where "essential job functions necessarily implicate the safety of others," the issue of safety may be treated as part of the employee's *prima facie* showing of qualification, rather than part of an affirmative defense for which the employer bears the burden of proof. 110 F.3d 135, 144 (1st Cir. 1997). The Plaintiff asserts that *Amego* is inapplicable because the Laborer position, unlike the position at issue in *Amego*, is not a job where essential functions necessarily implicate the safety of others. Pl.'s Opp'n to Defs.' MSJ 9–10.

I disagree. Although *Amego* applies in only "a limited category of cases," *Warren v. United Parcel Serv., Inc.*, 518 F.3d 93, 99 (1st Cir. 2008), its scope is not so limited as to exclude a job that common sense dictates entails serious safety hazards. *See, e.g.*, *Rooney*, 483 F. Supp. 2d at 54 (finding that a job that "inevitably involves working with hazardous and sometimes dangerous materials" necessarily implicates the safety of others); *Reynolds v. VHS Transp. Co.*, Civil Action No. 09cv11639–NG, 2011 WL 245561, at *1 (D. Mass. Jan. 20, 2011) (holding that a van driver's job necessarily implicated the safety of others). Here, the Laborer position entails essential functions that necessarily implicate the safety of others. This includes, but is not limited to, working at heights with tools that, if dropped, could pose a deadly threat to fellow construction workers or pedestrians below. Thus, for the purpose of

---

not raised a safety defense. MSJ 14. Thus, at least with regard to the MHRA claim, the issue of safety is not the Plaintiff's burden at the qualification stage.

Austin's ADA claim, *Amego* is applicable and the safety risk issue is part of Austin's burden to prove that he is a qualified individual. *See Amego*, 110 F.3d at 144.

Even putting the burden of proof on Austin, however, a reasonable factfinder could determine that Austin did not pose a significant risk to his own health and safety or the health and safety of others. In assessing whether a plaintiff poses a significant risk to others, I consider the factors set forth by the Supreme Court in *School Board of Nassau County v. Arline*, 480 U.S. 273 (1987). *See Amego*, 110 F.3d at 145–47 (applying the *Arline* factors to determine whether the employee posed a significant risk to others). The *Arline* factors include: (a) the nature of the risk (how the Plaintiff's disability puts others at risk), (b) the duration of the risk (how long the risk lasts), (c) the severity of the risk (the potential harm to third parties), and (d) the probability that the disability will cause harm. *Arline*, 480 U.S. at 288. Here, the risks the Defendants point to are ones that anyone, with or without a disability like Austin's, might face. For example, although hanging in a safety harness for a prolonged period might cause adverse reactions, the Defendants' own expert witness stated that anyone hanging in a harness could experience those adverse reactions and that the Plaintiff's health condition does not necessarily put him at a greater risk for them. SOF ¶¶ 186, 189. Similarly, there is always a risk that a construction worker will drop objects, which is why there are federal safety requirements to minimize the risk of injury from dropped objects. *See* SOF ¶ 197. Even if there is a heightened risk that Austin might drop items, there is a genuine issue of fact as to the severity of that risk and the probability of harm. *See* Martha Catavenis [sic] Dep.

64:22–71:4 (ECF No. 46-16); Robert V. Flynn Dep. 112:13–113:20 (ECF No. 46-13). Without a more conclusive record, these are questions best resolved by a jury.

### D. Qualified Individual

This motion for summary judgment presents close questions, and many of the material facts are in dispute. Putting the pieces together, in the light most favorable to the plaintiff, a reasonable factfinder could determine that Austin was a qualified individual. As explained above, the ability to work at heights is an essential function, and Austin has met his burden of showing that he can perform this work safely through accommodations, such as through the use of fall protection.[10]

---

[10] It bears mentioning several other considerations weighing in Austin's favor:

First, during the time Austin was employed, the Defendants appeared to be satisfied with his job performance. SOF ¶¶ 86–87. "[E]vidence that an employer 'pronounced itself fully satisfied with an employee's level of performance even while she suffered from her disability' can create a trialworthy issue as to whether the employee is a qualified individual." *Kendrick v. Me. Med. Ctr.*, No. 2:19-cv-00028-GZS, 2021 WL 3013370, at *12 (D. Me. June 30, 2021) (quoting *Calero-Cerezo v. U.S. Dep't of Just.*, 355 F.3d 6, 23 (1st Cir. 2004)).

Second, following the January 31, 2019, syncopal event, Austin obtained a note from his primary care provider clearing him to return to work. SOF ¶¶ 95, 97, 106. Although there is a dispute as to whether Austin's physician fully understood the nature of Austin's job and health condition before signing off on the note, a reasonable factfinder could find, based on Austin's physician's evaluation, that Austin was qualified to perform the duties of the job.

Finally, Austin's subsequent employment as a construction worker, in positions in which he worked as a roofer, presumably at heights, supports the idea that Austin is qualified. SOF ¶¶ 199–200; *see Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 27 (1st Cir. 2002) (noting the plaintiff's subsequent demonstration of her ability to perform an essential function as "circumstantial evidence" that helped "raise a reasonable inference that the [plaintiff] was qualified").

## CONCLUSION

For the reasons stated above, the Court **DENIES** the Defendants' Motion for Summary Judgment (ECF No. 48).

SO ORDERED.

/s/ Nancy Torresen<br>
United States District Judge

Dated this 23rd day of February, 2022.